UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COREY MENARD | CIVIL ACTION |
| VERSUS | NO. 16-498 |
| LLOG EXPLORATION COMPANY, LLC, ET AL. | SECTION "R" (3) |

# ORDER AND REASONS

Defendants LLOG Exploration Company, LLC; LLOG Exploration Offshore, LLC; and LLOG Exploration & Production Company, LLC (collectively, "LLOG") move for summary judgment on plaintiff Corey Menard's claims.[1] For the following reasons, the Court grants LLOG's motion.

## I. BACKGROUND

In early 2015, plaintiff Corey Menard was employed as a senior field technician by Gly-Tech Services, and was assigned to work offshore on LLOG's Delta House Floating Production System, a semi-submersible oil-

---

[1] R. Doc. 44.

exploration platform in the Mississippi Canyon.[2] On or about January 22, 2015, plaintiff was aboard the M/V ARABIAN, a support vessel adjacent to the Delta House. According to plaintiff, because of high winds and rough seas, the M/V ARABIAN was moving back into shallow waters to give the crew a break from the extreme conditions.[3] Plaintiff alleges that before the M/V ARABIAN moved, LLOG required plaintiff to go from the M/V ARABIAN to the Delta House via a personnel basket transfer to collect belongings left on the Delta House.[4] Plaintiff further alleges that during his attempted transfer, the extremely rough seas caused the personnel basket to abruptly thrust upward and slam plaintiff, severely injuring his lower back.[5]

On January 20, 2016, plaintiff sued Grand Isle Shipyard, Gibson Applied Technology, and LLOG, alleging that their negligence caused his injury.[6] Plaintiff amended his complaint on June 28, 2016, and added Adriatic Marine, LLC, the owner and operator of the M/V ARABIAN, and Wood Group Production Services, Inc. (Wood Group), the entity responsible

---

[2] R. Doc. 1 at 3-4 ¶¶ 7, 8. At the time of the accident, LLOG Exploration Offshore, LLC was the Bureau of Ocean Energy Management qualified operator of the Delta House. R. Doc. 44-7 at 2 ¶ 10.
[3] R. Doc. 53-6 at 2-3.
[4] R. Doc. 1 at 4 ¶ 11; R. Doc. 53-6 at 2.
[5] R. Doc. 1 at 4 ¶ 11.
[6] *Id.* at 5-7 ¶¶ 14-16.

for operations on the Delta House, as defendants.[7] Plaintiff seeks a judgment of $3,000,000, punitive damages, attorneys' fees, and costs.[8]

LLOG now moves for summary judgment on plaintiff's negligence claims, arguing that there is no evidence of negligence attributable to any of the LLOG entities that caused or contributed to plaintiff's alleged injuries, and that as a matter of law LLOG is not liable for any negligent acts by the other defendants.[9] Plaintiff filed a response in opposition,[10] and also separately moved the Court to delay or defer consideration of LLOG's motion so that plaintiff can obtain additional discovery.[11] LLOG replied,[12] and filed an opposition to plaintiff's request to delay consideration of its summary judgment motion.[13]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

---

[7] R. Doc. 26 at 3-4.
[8] *Id.* at 7-8.
[9] R. Doc. 44-1 at 2.
[10] R. Doc. 53.
[11] R. Doc. 50.
[12] R. Doc. 60.
[13] R. Doc. 56.

3

*Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's

4

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

Federal Rule of Civil Procedure 56(d) governs requests for additional time for discovery before consideration of a pending motion for summary judgment. It permits a district court to deny or defer consideration of a motion for summary judgment, allow time to take discovery, or "issue any other appropriate order" when "a nonmovant shows by affidavit or

5

declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Nonetheless, the party seeking a continuance "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). Instead, the party seeking to continue a motion for summary judgment to obtain further discovery must demonstrate (1) "why he needs additional discovery" and (2) "how the additional discovery will create a genuine issue of material fact." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993). In other words, the plaintiff must identify specific facts, susceptible of collection, and indicate how those facts "'will influence the outcome of the pending summary judgment motion.'" *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (quoting *Raby*, 600 F.3d at 561)).

Here, plaintiff asserts that he has not yet had time to review LLOG's responses to plaintiff's second set of discovery requests and that his motion to compel an inspection of the Delta House is currently pending before Magistrate Judge Knowles.[14] But plaintiff's motion does not identify what specific facts he seeks, much less explain how those unspecified facts will

---

[14] R. Doc. 50-2 at 2-3.

influence the outcome of LLOG's summary judgment motion. Plaintiff's desire for additional information, without more, does not warrant a continuance under Rule 56(d). Rule 56(d) "does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of [value]." *Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997) (internal quotation omitted); *see also Jason v. Parish of Plaquemines*, No. 16-2728, 2016 WL 4623050, at *4-5 (E.D. La. Sept. 6, 2016) (denying plaintiff's request to defer consideration of motion for summary judgment because plaintiff gave "nothing more than a 'speculative hope' that discovery might provide plaintiff with information supporting his claims") (quoting *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1567 (Fed. Cir. 1987)).

Additionally, even if plaintiff's motion did specifically identify facts that would affect the outcome of the pending summary judgment motion, Rule 56(d) requires that plaintiff make this showing by *affidavit or declaration*. Plaintiff's motion and the attached documents include neither an affidavit nor a declaration. This alone is sufficient grounds to deny plaintiff's motion. *See Scotch v. Letsinger*, 593 F. App'x 276, 278 (5th Cir. 2014) ("Because Scotch did not submit either an affidavit or a declaration, the district court did not err in denying Scotch's request."); *Leza v. City of Laredo*, 496 F. App'x 375, 377-78 (5th Cir. 2012) (affirming denial of Rule

7

56(d) motion because movant did not present affidavit or declaration); *see also Sandusky Wellness Ctr., LLC v. Medco Health Sols, Inc.*, 788 F.3d 218, 226 (6th Cir. 2015).

Because plaintiff's motion is both procedurally and substantively defective, the Court will not delay or defer consideration of LLOG's motion for summary judgment.

## III. DISCUSSION

As an initial matter, the Court must determine the applicable law that governs plaintiff's negligence claims. Plaintiff's complaint asserts admiralty jurisdiction, under which general maritime law would apply.[15] *See Alexander v. Kevin Gros Consulting & Marine Servs., Inc.*, No. 14-1273, 2016 WL 430413, at *4 (E.D. La. Feb. 4, 2016) (citations omitted). But plaintiff also asserts, in the alternative, jurisdiction under the Outer Continental Shelf Lands Act (OCSLA), which generally adopts the law of the adjacent state as a supplement to federal law. *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969). Essentially, if plaintiff was injured on the M/V ARABIAN at sea or while en route to the Delta House, maritime law applies, and if he was injured on the Delta House, Louisiana law applies

---

[15] R. Doc. 1 at 1 ¶ 1.

8

through OCSLA.[16] *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 781 (5th Cir. 2009).

The parties' briefs do not answer the choice of law question, instead the parties brief the issues under both general maritime and Louisiana law. But Plaintiff testified that he was injured when the personnel basket jerked up while on the deck of the M/V ARABIAN, and not while he was en route or aboard the Delta House.[17] Thus, as the evidence indicates that plaintiff was on the M/V ARABIAN when injured, and not on the Delta House, general maritime law applies.

To establish maritime negligence, a plaintiff must demonstrate "'that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (internal modifications omitted)). Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances. *Id.* (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

---

[16] The parties do not dispute that Delta House's offshore location is adjacent to the State of Louisiana.
[17] R. Doc. 44-5 at 4.

LLOG argues that there is no evidence of any negligence attributable to any of the LLOG entities that caused or contributed to plaintiff's alleged injuries.[18] In support, LLOG submits the affidavit of Craig Mullett, LLOG's Offshore Construction Manager.[19] Mullett attests that there were no employees of any of the LLOG entities on either the Delta House or the M/V ARABIAN on January 22 or 23, 2015.[20] Further, Mullett attests that the two cranes on Delta House (that are used in personnel basket transfers) were not operated by LLOG employees, and that no crane defects were reported to LLOG in January, 2015.[21]

Plaintiff's complaint identified more than fifteen specific negligent actions or inactions that LLOG allegedly took or failed to take, including failing to properly transfer plaintiff from the M/V ARABIAN to the Delta House, requiring plaintiff to make the transfer, failing to provide proper safety precautions, etc.[22] Despite the allegations in plaintiff's complaint, however, plaintiff has submitted no evidence of any negligence by the LLOG entities themselves that caused his injuries. Plaintiff testified at his deposition that he did not know if anyone with him on the day of the accident

---

[18] R. Doc. 44-1 at 2.
[19] R. Doc. 44-7.
[20] *Id.* at 2-3 ¶¶ 14, 15.
[21] *Id.* at 3 ¶¶ 17-19.
[22] R. Doc. 1 at 5-6 ¶ 14.

was employed by any of the LLOG entities, and could not identify anything that any LLOG employee did that was a cause of his accident.[23] Additionally, he was not aware of any defects or problems with the crane used for the personnel basket transfer that could have caused the accident.[24] Finally, plaintiff testified in his deposition that the instruction to make the personnel basket transfer came from the Offshore Installation Manager Chuck Breaux, an employee of Wood Group.[25] Therefore, not only is there no evidence that LLOG required defendant to make the personnel basket transfer at issue, but also there is no evidence that any LLOG employee was present at the time of the accident or directly influenced the decision to make the personnel basket transfer.

Given this absence of evidence, any argument that LLOG should be liable for Menard's injuries is based on either holding LLOG liable for the acts of its contractor Wood Group, or liable as the time charterer of the M/V ARABIAN.

### A. Independent Contractor Liability

The Fifth Circuit has "consistently held" that a principal has no general liability for the negligence of its "independent contractors over which he

---

[23] R. Doc. 44-5 at 5-6.
[24] *Id.* at 6.
[25] R. Doc. 53-6 at 2; R. Doc. 60-1 at 12.

exercises no operational control." *Skinner v. Schlumberger Tech. Corp.*, 655 F. App'x 188, 192 (5th Cir. 2016) (quoting *Wilkins v. P.M.B. Sys. Eng'g, Inc.*, 741 F.2d 795, 800 (5th Cir. 1984)).[26] Therefore, the analysis of LLOG's liability for the actions of its independent contractor Wood Group is limited to whether LLOG exercised operational control over the employees of Wood Group.

LLOG points to the terms of the Master Service Agreement between LLOG and Wood Group to argue that it had no operational control over Wood Group.[27] The agreement states:

> [LLOG] shall designate the work it desires to be performed and the ultimate results to be obtained, but shall leave to Contractor the methods and details of performance of the work, [LLOG] being only interested in the results obtained and having no control over the manner and method of performance.[28]

The clear language of the agreement indicates that Wood Group had exclusive control over the methods and performance of its employee's work,

---

[26] There is no appreciable difference between federal maritime law and Louisiana law on this issue. *See Alexander*, 2016 WL 430413, at *4. Though Louisiana law, and not general maritime law, imposes liability upon the principal for damages caused by an independent contractor if the independent contractor is performing an ultra-hazardous activity, a personnel basket transfer is not an ultra-hazardous activity. *See Newman v. KMJ Servs., Inc.*, No. 04-2518, 2006 WL 3469563, at *2 (E.D. La. Nov. 30, 2006) (citing *Mathis v. Lafayette Crewboat Servs., Inc.*, No. 93-3899, 1995 WL 550950, at *2 (E.D. La. Sept. 15, 1995)).
[27] R. Doc. 44-8.
[28] *Id.* at 1 ¶ 3.1.

12

and that LLOG expressly disclaimed any connection with the actual performance of the services to be provided. Plaintiff has submitted no evidence that LLOG gave specific instructions or directives to Wood Group as to how its employees should work or how to perform any part of their duties, and it is uncontested that no LLOG employee was present when Menard's accident occurred. Accordingly, as there is no dispute of material fact indicating that LLOG exercised operational control over Wood Group's employees, as a matter of law LLOG is not liable for Wood Group's allegedly negligent acts. *See Skinner*, 655 F. App'x at 192-93; *see also Coulter v. Texaco, Inc.,* 117 F.3d 909, 912 (5th Cir. 1997) (applying Louisiana law); *Newman*, 2006 WL 3469563, at *2-3 (same).

B. **Time Charterer Liability**

Plaintiff also seeks to hold LLOG liable, as the time charterer of the M/V ARABIAN, for the negligence of Adriatic Marine, the owner and operator of the M/V ARABIAN.[29] The Fifth Circuit has held that a time charterer "owes a hybrid duty arising from contract and tort to persons including vessel passengers, to avoid negligent activity within 'the sphere of activity over which it exercises at least partial control.'" *Callahan v. Gulf Logistics, L.L.C.*, 456 F. App'x 385, 390 (5th Cir. 2011) (quoting *Hodgen v.*

---

29   R. Doc. 26 at 4 ¶ 5.

*Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996)). The traditional spheres of activity over which time charterer's exercise control and thus owe a duty include, *inter alia*, "choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment." *Hodgen*, 87 F.3d at 1520 (collecting cases). Caselaw also shows that "absent special circumstances, a time charterer's traditional sphere of control does not extend to providing a safe means of ingress and egress [to and] from the vessel." *Callahan*, 456 F. App'x at 390 (citations omitted). The vessel owner and time charterer may, however, vary the traditional assignment of control by contract. *Hodgen*, 87 F.3d at 1520.

Both parties rely on the Blanket Time Charter Agreement between LLOG and Adriatic Marine for their respective positions. The agreement states:

> [LLOG] shall have the sole and exclusive right to the services and full reach of each vessel time chartered [from Adriatic], but nothing contained herein or elsewhere to the contrary shall be construed as a demise of the vessel to [LLOG], and the entire operation, navigation, management, control, performance and use of each vessel shall be under the sole and exclusive command of, and be actually accomplished by [Adriatic] as an independent contractor, [LLOG] only interested in the results obtained. [LLOG] shall, however, have the right to designate the voyages to be undertaken and the services each vessel is to perform, subject always to the sole right of [Adriatic] or the captain of each vessel

to determine whether the movement may be safely undertaken, with the captain always being in charge.[30]

The plain text of the agreement contains nothing indicating that LLOG had control over decisions related to personnel transfers, and expressly reserves the exclusive operation, navigation, management, control, performance and use of the M/V ARABIAN to Adriatic. This includes the decision to determine whether any "movement may be safely undertaken."[31] Further, plaintiff submits no evidence that LLOG's conduct as a charterer was "more broadly exercised or inconsistent with the terms of the charter agreement," *Callahan*, 456 F. App'x at 391, in relation to the personnel transfer. Plaintiff also submits no evidence of "special circumstances" indicating that LLOG had control over ingress and egress from the vessel. Thus, there is no disputed issue of fact over LLOG's lack of contractual and operational control, and therefore as a matter of law LLOG is not liable for the allegedly negligent actions of Adriatic. *See Barron v. BP Am. Prod. Co.*, 590 F. App'x 294, 296-97 (5th Cir. 2014); *D.C. Chem. Co. v. M/T ST. PETRI*, 654 F. Supp. 2d 574, 578-80 (S.D. Tex. 2009).

Plaintiff attempts to resist this conclusion by arguing that: 1) the terms of the agreement provide that LLOG has "the right to designate the voyages

---

[30] R. Doc. 44-9 at 2 ¶ 11.
[31] *Id.*

to be undertaken and the services each vessel is to perform;"[32] and 2) the decision to move the M/V ARABIAN into shallow waters is a "voyage" and performing a personnel basket transfer is a "service."[33] This argument is meritless. First, not only does plaintiff not cite a single case defining "voyage" in this context to include a decision to move a vessel into shallow waters, but also a nearly identical argument was recently rejected by the Fifth Circuit in *Callahan*.

In *Callahan*, the plaintiff was aboard a support vessel preparing to board a drilling rig via a personnel basket transfer in rough sea conditions. 456 F. App'x at 388. Shortly before the transfer, the vessel lunged, and the plaintiff injured his back. *Id.* Plaintiff sued multiple defendants, including the time charterer of the support vessel, alleging negligence. After the district court granted the time charterer summary judgment, the Fifth Circuit rejected the plaintiff's argument that the time charterer owed plaintiff a duty because the time charterer had authority to decide *where* and *when* the personnel transfer would occur. Relying on an essentially identical charter agreement, the Fifth Circuit held that the charterer "disavowed all control" over "the means by which [the charterer's] results were obtained,

---

[32] *Id.*
[33] R. Doc. 53 at 7-8.

including the decision to "determine the safety of a voyage." *Id.* at 391. Finally, the Fifth Circuit held that the time charterer's "right to designate the voyages to be undertaken" referred "only to [the time charterer's] designation of the general mission of the vessel but not to operational matters such as the timing of personnel transfers." *Id. Callahan*'s logic applies equally here. Further, even assuming that a personnel transfer is a service, LLOG expressly disclaimed management and control over the method of execution of services provided by Adriatic, including whether the movement could be safely undertaken. Plaintiff's argument is unavailing.

Finally, plaintiff argues that at this stage he is entitled to all reasonable inferences, and that with all reasonable inferences in his favor, there are genuine issues of material fact that should preclude summary judgment.[34] While plaintiff is correct that he is entitled to all *reasonable* inferences, the inferences must be *justifiable. See Tolan v. Cotton,* 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Plaintiff has pointed to no such reasonable or justifiable inferences that can be drawn from this record.

---

[34] R. Doc. 53 at 9-10.

## IV. CONCLUSION

For the foregoing reasons, LLOG's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this __10th__ day of April, 2017.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE